IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, STATE OF ILLINOIS, ex rel. JANE DOE, | ) ) ) ) | |
| Plaintiff/Relator, | ) ) | |
| v. | ) ) | No. 05 C 5490 |
| COUNTY OF COOK, JOHN H. STROGER, JR., JERRY ROBINSON, JOHN GIBBS, WILLIE ROSS, AUTREY CALLOWAY, SANDRA JONES, J.W. FAIRMAN, NATHANIEL HUGHES, LYNNE YARBER-WEST, MICHAEL ELLIS, DAVID PERSONS, MARC QUILLEN, ALAN CARTER, TONY WORMLEY, and CARTHRIC NEWSOM, individually, | ) ) ) ) ) ) ) ) ) ) ) | Judge Ronald A. Guzmán |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

The United States of America and the State of Illinois, through relator Jane Doe, have sued Cook County, and John H. Stroger, Jr.,[1] Jerry Robinson, John Gibbs, Willie Ross, Autrey Calloway, Sandra Jones, J.W. Fairman, Nathaniel Hughes, Lynne Yarber-West, Michael Ellis, David Persons, Marc Quillen, Alan Carter, Tony Wormley and Carthric Newsom, in their individual capacities, for their alleged violations of the False Claims Act, 31 U.S.C. § 3729, and the Illinois Whistleblower Reward and Protection Act, 740 Ill. Comp. Stat. 175/1, *et seq.* Defendants Cook County, Stroger, Robinson, Calloway, Jones, Hughes, Yarber-West, Persons, Quillen, Carter and Newsom have filed

---

[1] The Court takes judicial notice of the fact that defendant Stroger died during the pendency of these proceedings. Plaintiff has thirty days from the date of this Order to file a motion for substitution, if appropriate, or the Court will dismiss the claims against Stroger.

a motion to dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).[2] For the reasons set forth below, the Court grants in part and denies in part the motion.

## Facts

Jane Doe is an employee of Cook County's Juvenile Temporary Detention Center ("the Center"), which provides housing for juveniles awaiting adjudication of their cases in juvenile or criminal court. (First Am. Compl. ¶¶ 2, 9, 10-11.) The Center's operations are funded by grants from the state and federal governments. (*Id.* ¶ 13.)

At the times relevant to this suit, defendant: Stroger was President of the Cook County Board of Commissioners and, as such, was responsible for the Center's operations (*id.* ¶ 14); Robinson was the Center's Superintendent, and was responsible for the Center's day-to-day operations (*id.* ¶ 23); Calloway was the Center's Assistant Superintendent for recreation (*id.* ¶ 19); Jones was the Center's Assistant Superintendent in charge of its kitchen, purchasing functions and caseworkers (*id.* ¶ 17); Hughes was the Center's recreation supervisor, Yarber-West and Carter were acting supervisors, and Quillen was the acting program coordinator for recreation who, together, were responsible for the activities of the Center's recreation department (*id.* ¶¶ 25-28); and Persons and Newsom were employees of the Center's recreation department (*id.* ¶ 30).

According to plaintiff, the individual defendants used the governments' funds to, among other things, pay themselves and others for hours not worked, defray their personal expenses, wrest kickbacks from the Center's contractors and employees, and otherwise divert or steal the governments' money – all with Stroger, Robinson and Jones' knowledge and consent. (*See id.* ¶¶

---

[2]According to the docket, defendants Ross and Ellis have not been served, and defendants Gibbs, Fairman and Wormley have been served but have not filed appearances in this case. Thus, the claims asserted against them are not implicated by this motion.

2-3, 13-31, 37-60, 63-65, 67-75.) Moreover, plaintiff says, after she complained about their conduct to the state and federal governments, defendants retaliated against her by, among other things: taking unfounded disciplinary action against her; timing her use of the bathroom; barring her from working overtime; and giving her more onerous work assignments. (*Id.* ¶¶ 78- 93.)

### Discussion

On a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded factual allegations of the complaint, drawing all reasonable inferences in plaintiff's favor. *Forseth v. Vill. of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," but plaintiff must make sufficient "[f]actual allegations . . . to raise [her] right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (quotation omitted).

In Counts I and II, plaintiff alleges that defendants' actions violated section 3729(a)(2) of the False Claims Act ("FCA") and section 175/3(a)(2) of its state counterpart, the Illinois Whistleblower Reward and Protection Act ("IWRPA"), by submitting false and fraudulent claims to the federal and state governments.[3] To state a claim against any defendant under either section (hereafter, "section (a)(2) claims"), she must allege that "(1) the defendant made a statement in order to receive money from the government, (2) the statement was false, and (3) the defendant knew it was false." *United States ex rel. Gross v. AIDS Research Alliance-Chi.*, 415 F.3d 601, 604 (7th Cir. 2005); *see Scachitti v. UBS Fin. Servs.*, 831 N.E.2d 544, 557 (Ill. 2005) (stating that the IWRPA "closely mirrors the Federal False Claims Act" and applying FCA jurisprudence to an IWRPA claim). In addition, she must allege these elements with the specificity required by Rule 9(b). *See*

---

[3]These are the statutory sections on which plaintiff relies. (*See* Pl.'s Mem. Law Resp. Mot. Dismiss at 6.)

3

*Gross*, 415 F.3d at 604 ("The FCA is an anti-fraud statute and claims under it are subject to the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure."); *Ackerman v. Nw. Mut. Life Ins. Co.*, 172 F.3d 467, 470 (7th Cir. 1999) (noting that Rule 9(b) applies to state fraud claims brought in federal court).

Defendants contend that plaintiff has not stated a section (a)(2) claim against Stroger or Robinson because she has not alleged that either of them "made" a false claim. The Court agrees, in part. Defendants cannot be held liable under section (a)(2) simply because they knew others were submitting false claims. *See* 31 U.S.C. § 3729(a)(2) (imposing liability on any person who "knowingly makes, uses, or causes to be made or used" a false or fraudulent claim to the government); 740 Ill. Comp. Stat. 175/3(a)(2) (same); *United States ex rel. Durcholz v. FKW Inc.*, 189 F.3d 542, 544 (7th Cir. 1999) ("[W]hat constitutes the offense is not intent to deceive but knowing *presentation* of a claim that is either fraudulent or . . . false." (quotation omitted and emphasis added)). Rather, to be liable, defendants must take some "affirmative action" to make a false claim or cause one to be made. *United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 714 (10th Cir. 2006). Consequently, Stroger and Robinson's alleged knowledge that other defendants were making false claims is not a basis for imposing section (a)(2) liability on them.

Neither is plaintiff's claim that Stroger "ordered" the Center to reimburse Calloway for funds he gave to his friends for officiating at Center events. (*See id.* ¶ 67.) Plaintiff alleges, that: (1) Calloway gave money to friends for officiating services, though they did "little or no work"; (2) Susan Tidwell, an employee of the Center's purchasing department, denied Calloway's "scantily-documented requests"; and (3) Calloway "turned to Defendant Stroger, who subsequently telephoned Tidwell and ordered her to reimburse Calloway." (*Id.*) Those allegations support the

4

inference that Stroger knew Calloway's requests to the purchasing department were poorly documented, but not that the requests were false or that the charges were ultimately passed on to the state or federal governments. Consequently, they do not support the inference that Stroger made a false claim in this instance.

However, plaintiff also alleges that Stroger "assigned money" from a state grant to pay for two positions unrelated to the Center and that he and Robinson "consent[ed]" to others' submissions of false claims to the federal government. (*Id.* ¶¶ 13, 54, 67, 70). If those allegations are true, and for the purposes of this motion we must assume that they are, then plaintiff has sufficiently alleged that Stroger and Robinson "made" statements to the state or federal government.

Even if they did so, defendants contend that the section (a)(2) claims plaintiff asserts against Stroger and Robinson still fail because she has not alleged them with the specificity required by Rule 9(b). That Rule requires plaintiff to allege "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated," *i.e.*, "the who, what, when, and where of the alleged fraud." *Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992) (quotations omitted).

The claim that Stroger used state grant money for non-Center activities passes muster under Rule 9(b). With respect to this claim, plaintiff says that in 2003, Stroger "assigned" state grant money to fund two positions in the County's Bureau of Public Safety that were wholly unrelated to the Center. (First Am. Compl. ¶¶ 13, 54.) Though not exceedingly detailed, those allegations are sufficient to satisfy Rule 9(b).

The situation is different for plaintiff's claim that Stroger and Robinson "consent[ed]" to others' submissions of false claims. (*Id.* ¶ 70.) Plaintiff does not allege how Stroger and Robinson

5

consented to the submission of false claims, which claims they consented to having submitted, or the time frame in which they did so. Absent that information, this claim fails.

The FCA and IWRPA claims plaintiff asserts against Persons and Newsom are similarly infirm. Though plaintiff alleges the "who" and the "what" of this purported fraud, *i.e.*, that Persons and Newsom submitted false overtime claims, the remaining Rule 9(b) requirements are absent. With respect to when defendants allegedly submitted the fraudulent claims, plaintiff says only that they did so "on multiple occasions," starting in 2002 and continuing throughout their employment. (First Am. Compl. ¶¶ 28, 30.) Moreover, plaintiff alleges that Persons and Newsom perpetrated this fraud by having their "co-workers" or "[s]upervisors" alter their time records, but does not identify any person who did such altering. (*Id.*) Finally, plaintiff does not allege how or when the allegedly false time sheets resulted in a false claim being submitted to any government agency. Without such allegations, plaintiff has not stated viable section (a)(2) claims against these defendants.

The section (a)(2) claims plaintiff asserts against defendants Hughes, Quillen, Carter and Yarber-West are similarly flawed. Plaintiff alleges, for example, that all four of these defendants falsified their own time sheets and those of their subordinates, demanded overtime kickbacks from their subordinates, or otherwise took pay to which they were not entitled without specifying when those actions occurred , identifying the subordinates who were involved or explaining how or when those false time sheets were presented to a government body for payment. (*Id.* ¶¶ 28-29, 38-41, 46.) Likewise, plaintiff alleges that these defendants "cover[ed] up" staff members' abuse of residents, without saying when they did so, who was involved, or how those actions resulted in the submission of false claims. (*Id.* ¶ 51.) Plaintiff also says that Hughes demanded money from contractors and falsely attested that certain employees were qualified to receive higher salaries than their credentials warranted, without saying when he did so, identifying the employees or contractors involved or

6

explaining how the state or federal government ended up footing the bill. (*Id.* ¶¶ 42, 45.) Without more details, these allegations do not state viable section (a)(2) claims.

The section (a)(2) claims against the last two defendants, Jones and Calloway, suffer the same fate. According to plaintiff, these two defendants used unspecified grant funds at unspecified times to pay for their own unspecified "personal expenses" or those of unidentified friends. (*Id.* ¶¶ 18, 20.) Both defendants are also alleged to have used grant money to pay unidentified friends to officiate non-existent athletic events at unspecified times. (*Id.* ¶¶ 20, 44, 67.) Further, plaintiff says that Jones "repeatedly" signed off on payroll submissions for employees who did not work for the Center, but does not allege how many such requests Jones approved, when he did so or how those submissions culminated in the presentation of false claims to the government. (*Id.* ¶ 68.)[4] Similarly, plaintiff alleges that Jones "consent[ed]" to Center employees Kemp, Quallas and Melendez's submission of false claims to the federal government for food, but she does not say how many requests were submitted, when they were submitted, or how Jones consented to their submission. (*Id.* ¶ 70.)

Plaintiff says she need not and cannot allege her claims more specifically because, unlike defendants, she does not have access to the Center's payroll and financial records. *See Corley v. Rosewood Care Ctr., Inc.*, 142 F.3d 1041, 1051 (7th Cir. 1998) ("We have noted on a number of occasions that the particularity requirement of Rule 9(b) must be relaxed where the plaintiff lacks access to all facts necessary to detail his claim . . . ."). That argument might be persuasive if plaintiff lacked only the specific dates on which false claims were submitted. But missing dates are

---

[4] Plaintiff also alleges that the "departmental supervisors . . . would keep nonexistent or former [Center] staff members on their payrolls and collect the payroll checks issued for the non-existent or former employees . . . ." (First Am. Compl. ¶ 48.) Plaintiff does not, however, identify the "departmental supervisors" who allegedly submitted the false payroll claims, when they did so, or how they resulted in the presentation of false claims. Consequently, these allegations also do not state a viable section (a)(2) claim against any of the defendants.

only part of the problem. Plaintiff alleges that defendants Persons, Newsom, Hughes, Quillen, Carter and Yarber-West submitted false payroll claims for themselves and/or others without identifying which time sheets were altered or by whom or how those timesheets were presented as false claims to the government. Similarly, she alleges that Hughes demanded kickbacks from contractors, and Jones and Calloway paid their own and others' expenses without identifying the contractors, expenses or people involved, or how these payments translated into false claims. Plaintiff has no basis for alleging that defendants engaged in these activities unless she has specific information, *i.e.*, which employee's time sheet was altered by which defendant in what manner, about at least some of them. Until she supplies that information, plaintiff cannot satisfy Rule 9(b).

In Counts III and IV, plaintiff alleges that defendants retaliated against her in violation of the FCA and the IWRPA. The individual defendants contend that they cannot be held liable on these claims because both statutes impose liability on employers, not on supervisors. The Court agrees.

The FCA and IWRPA prohibit "employer[s]" from retaliating against whistleblowers. *See* 31 U.S.C. § 3730(h) ("Any employee who is . . . in any . . . manner discriminated against in the terms and conditions of employment *by his or her employer* because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section . . . shall be entitled to all relief necessary to make the employee whole." (emphasis added)); 740 Ill. Comp. Stat. 175/4(g) (same). The statutes do not define the term "employer," and neither the Seventh Circuit nor the Illinois Supreme Court has opined on its meaning.

A number of other courts, however, have concluded that the term refers only to the employing entity, and have rejected FCA retaliation claims asserted against defendants in their individual capacities. *See United States ex rel. Golden v. Ark. Game & Fish Comm'n*, 333 F.3d 867,

870-71 (8th Cir. 2003) (affirming dismissal of FCA retaliation claims asserted against members of government commission in their individual capacities because plaintiff was employed by the commission, not the commissioners); *Yesudian ex rel. United States v. Howard Univ.*, 270 F.3d 969, 972 (D.C. Cir. 2001) (stating that the FCA's retaliation provision "plainly mentions only the 'employer' as incurring liability," a term that is not generally defined to "apply to a supervisor in his individual capacity"); *Pollak v. Bd. of Trustees of Univ. of Ill.*, No. 99 C 710, 2004 WL 1470028, at *3 (N.D. Ill. June 30, 2004) (noting other courts' holdings that "supervisors . . . do not qualify as 'employers' subject to liability under the FCA" and saying there is "no reason to doubt that the Seventh Circuit . . . would reach [the same] conclusion"). The Court finds the reasoning of these cases persuasive and likewise concludes that plaintiff cannot assert FCA or IWRPA retaliation claims against the individual defendants.

That leaves the retaliation claims plaintiff asserts against Cook County. The County argues that the IWRPA retaliation claim must be dismissed because the Illinois Tort Immunity Act renders it immune from such liability. In relevant part, that statute provides: "A local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable." 745 Ill. Comp. Stat. 10/2-109. Because the individual defendants cannot be held liable for IWRPA retaliation, the County says section 2-109 saves it from liability as well.

Plaintiff contends that section 2-109 is trumped by section 2-202 of the Act, which exempts municipal employees from liability for negligence but not for willful and wanton conduct. *See* 745 Ill. Comp. Stat. 10/2-202 ("A public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct."). Plaintiff argues that the individual defendants' behavior falls into the latter category, stripping them of the Immunity Act's protection.

9

The interplay between sections 2-109 and 2-202 is really beside the point. Section 2-202 does not create a cause of action for willful and wanton conduct. It simply preserves whatever liability exists for torts committed willfully and wantonly by public employees. As noted above, however, the individual defendants cannot be held liable for IWRPA retaliation, no matter how willful their conduct may be. Because the IWRPA does not impose retaliation liability on the individual defendants under any circumstances, section 2-202 does not apply. *See Smith v. Waukegan Park Dist.*, 869 N.E.2d 1093, 1096 (Ill. App. Ct.) (quotation and citations omitted) (saying, in the context of a common law retaliatory discharge claim, that the "language [of section 2-109] is both unambiguous and categorical. . . . [I]f the employee is not liable for his act – regardless of why the employee is not liable – then the local public entity is not liable."), *appeal allowed*, 875 N.E.2d 1124 (Ill. Sept. 26, 2007); *see also Regalado v. City of Chi.*, 40 F. Supp. 2d 1009, 1016 n.10 (N.D. Ill. 1999) (stating, in the context of a common law failure to provide medical care claim, "[a]lthough Act § 2-202 speaks only of public employees and not their governmental employers, Act § 2-109 grants a generic insulation from a 'local public entity['s] . . . liab[ility] for an injury resulting from an act or omission of its employee where the employee is not liable.' Hence to the extent (if any) that Officers are immune under Act § 2-202, City escapes too."). The County is, therefore, immune from plaintiff's IWRPA retaliation claim.

Plaintiff's last claim against the County, for FCA retaliation, requires her to allege that she engaged in statutorily-protected activity, the County knew she was engaged in that activity and the County took adverse action against her, at least in part, because of it. *Fanslow v. Chi. Mfg. Ctr., Inc.*, 384 F.3d 469, 479 (7th Cir. 2004). The County argues that the second element, its knowledge of plaintiff's protected conduct, is absent.

Plaintiff says her first amended complaint supports the inference that the County knew about her protected activity because she alleges that the retaliation started "at the same time that stories" about an ACLU investigation into the Center's operations appeared in the local media. (First Am. Compl. ¶ 85.) That allegation suggests that, when they took the purportedly retaliatory action, defendants knew the ACLU was investigating them, but not that they knew plaintiff had complained about them as well.

Plaintiff's allegations that the retaliation started after she "had reported her complaints" to the state and federal authorities (*id.* ¶ 86) is also unavailing. Absent some indication that the retaliation followed closely on the heels of her complaints to the authorities, the fact that the former occurred after the latter does not give rise to an inference of knowledge.

The only allegations that suggest such knowledge are that: (1) plaintiff "made numerous complaints to Defendants and their supervisors about [their] activities"; (2) an unidentified person called plaintiff a "snitch" at an unspecified time; and (2) in October 2005, after she had shown some falsified time sheets to Robinson, he passed them on to Calloway who, while pointing at plaintiff, "told [her] co-workers to stop 'messing around with the timesheets until the whistleblower could be gotten rid of.'" (*Id.* ¶¶ 91, 93, 115.) The vagueness of the first two allegations vitiates any inference of knowledge that could arise from them. The third allegation, however, supports the inference that as of October 2005, Calloway and Robinson knew plaintiff had engaged in protected conduct. Thus, to the extent plaintiff alleges that the County retaliated against her through or at the behest of Robinson or Calloway during or after October 2005, she has adequately pleaded the knowledge element of her claim.

## Conclusion

For the reasons set forth above, the Court grants in part and denies in part defendants' motion to dismiss [doc. no. 109]. The motion is granted as to: (1) the FCA and IWRPA retaliation claims against Stroger, Robinson, Hughes, Yarber-West, Calloway, Jones, Persons, Quillen, Carter and Newsom, which are dismissed with prejudice; (2) the IWRPA retaliation claim against Cook County, which is dismissed with prejudice; (3) any FCA retaliation claim against Cook County that is based on actions taken against her before October 2005, or actions taken against her after October 2005 by or at the behest of anyone other than Robinson or Calloway, which are dismissed without prejudice; (4) all of the section (a)(2) claims against Robinson, Newsom, Persons, Quillen Carter, Hughes, Yarber-West and Calloway, which are dismissed without prejudice; (5) all of the section (a)(2) claims against the County and Stroger, except for those based on Stroger's alleged use of state grant money to fund two positions unrelated to the Center, which are dismissed without prejudice. Plaintiff has fourteen days from the date of this Memorandum Opinion and Order to amend the claims dismissed without prejudice in accordance with this Order. If plaintiff fails to do so in that time, the Court will dismiss those claims with prejudice.

**SO ORDERED.**　　　　　　　　　　　　　　　ENTERED: 3/24/08

　　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　**RONALD A. GUZMAN**
　　　　　　　　　　　　　　　　　　　　　　　　**United States District Judge**

12